UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **WALTER DAILEY** | **CASE NO. 2:24-CV-01089** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **HEATHER PATTERSON ET AL** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 7] filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Heather Patterson and John S. Craft. Plaintiff Walter Dailey opposes the motion. Doc. 9.

I.
BACKGROUND

This suit arises from alleged inadequate medical care provided to pretrial detainee Walter Dailey at the Vernon Parish Jail. Doc. 1. Dailey alleges as follows: He was arrested and booked into the Vernon Parish Jail on February 11, 2023. *Id.* at ¶ 4. While still on pretrial detention, he was permitted to attend the Adult Challenge Program in Ruston, Louisiana, beginning on June 27, 2023. *Id.* at ¶ 7. At that program, however, he was tested for HIV on July 3 and learned four days later that he was positive. *Id.* at ¶¶ 8–10. Because of the stress caused by learning of his diagnosis, Dailey requested to be released from the recovery program and was returned to the jail on July 19, 2023. *Id.* at ¶ 9. The Vernon Parish Sheriff's Office was informed of Dailey's HIV status upon his return to the jail. *Id.* at ¶ 10.

Instead of providing him with treatment, the jail first sought to confirm his HIV status through two additional blood tests over the course of several weeks. *Id.* at ¶¶ 12–14. He did not begin treatment for his HIV until August 25, 2023, when he saw physician assistant Todd Warren after developing flu-like symptoms that turned into pneumonia. *Id.* at ¶¶ 18–21. Dailey had first developed these symptoms shortly after his return to the jail and complained regularly to defendant Heather Patterson, who evidently oversees healthcare at the jail, of not being able to breathe. *Id.* at ¶¶ 18–19.

Even after seeing Warren, Dailey's condition continued to deteriorate. On August 25 he was placed in isolation, where he became so ill that he could not stand up and lay on the ground vomiting and struggling to breathe. *Id.* at ¶¶ 23–24. On August 31, he was taken to Byrd Hospital in Shreveport and quickly admitted to the ICU. *Id.* at ¶¶ 25–28. Shortly after he arrived at the hospital, a deputy brought paperwork from the jail stating that Dailey had been released on his own recognizance. *Id.* at ¶ 27.

A few days after Dailey was admitted to the hospital, his family was informed that his HIV had progressed to AIDS. *Id.* at ¶ 29. On September 8, he was placed into a medically induced coma and put on a ventilator. *Id.* at ¶ 30. Later that day he was transported to Touro Infirmary, a hospital in New Orleans, where he remained in a coma until late October 2023. *Id.* at ¶¶ 31, 35. Upon emerging from the coma he was released to Sage Hospital in Denham Springs, and then to another hospital in Gonzales, Louisiana, for rehabilitation services in December 2023. *Id.* at ¶¶ 36–37. Finally, he was sent to a long-term nursing and rehabilitation facility in Baton Rouge, where he remains to this day. *Id.*

at ¶ 38. He anticipates needing at least another year at the rehabilitation facility. *Id.* at ¶¶ 39–40.

Doctors at both the Shreveport and New Orleans hospitals informed Dailey's family that he should have started antiviral medication as soon as he was diagnosed with HIV and that the jail's failure to treat him resulted in the progression of his HIV to AIDS. *Id.* at ¶ 32. Prior to being placed in his coma, Dailey informed his sister that defendant Patterson told him that defendant John S. Craft, the Vernon Parish Sheriff, was waiting for the Red Cross to approve his treatment because of the cost of the medication. *Id.* at ¶ 41.

Dailey blames the inadequate medical care he received at the jail with both the progression of his HIV to AIDS and prolonged hypoxia from his pneumonia. *Id.* at ¶¶ 42–44. He filed suit in this court against Patterson and Craft, raising claims under 42 U.S.C. § 1983 and Louisiana Civil Code articles 2315 and 2317. Defendants now move to dismiss his claims, arguing that plaintiff's complaint "omits the fact that Plaintiff *was* placed on medication the very day his HIV diagnosis was confirmed" and that they "cannot be said to have been deliberately indifferent to Plaintiff's medical needs considering the steps they took to confirm [his] diagnosis, provide him with medication once that diagnosis was confirmed, and then ultimately transport [him] to a hospital when he needed additional treatment." Doc. 7, att. 1, p. 4. Accordingly, they seek dismissal of plaintiff's claims for failure to show deliberate indifference to serious medical needs or negligence. They also maintain that defendant Patterson is entitled to qualified immunity on the federal claims and that plaintiff has not provided enough factual allegations to support a cause of action under state law against defendant Craft. Plaintiff opposes the motion. Doc. 9.

## II.
## LAW & APPLICATION

### A. Legal Standard

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

B. Application

The constitutional rights of a pretrial detainee are found in the Fourteenth Amendment's procedural and substantive due process guarantees. *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). The legal standard depends on whether the inmate challenges the conditions of his confinement or an episodic act or omission of a state official. *Id.* This matter appears to implicate the latter category because it faults individual officials for their decisions rather than "pervasive, systemic policies and customs" at the jail. *Feliz v. El Paso Cnty.*, 441 F.Supp.3d 488, 497 (W.D. Tex. 2020). Accordingly, the plaintiff must show that one or more jail officials acted or failed to act with deliberate indifference to the detainee's serious medical needs. *Sims v. City of Jasper, Tex.*, 543 F.Supp.3d 428, 440 (E.D. Tex. 2021) (citing *Estate of Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 305 (5th Cir. 2020)).

Deliberate indifference is a high bar, surpassing negligence and gross negligence. *Id.* (citing *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 460–63 (5th Cir. 2000)). As the Fifth Circuit recently explained:

> We have described deliberate indifference as "an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A detainee can establish a jail official's deliberate indifference by showing that the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Deliberate indifference can also be shown where a jail official knows that a detainee faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *See Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). On the other hand, "[u]nsuccessful medical treatment, acts of negligence, or medical

malpractice do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

*Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 307 (5th Cir. 2024).

Defendants maintain that plaintiff cannot meet this bar, or the lower one of negligence, and argue that their delay to confirm his HIV diagnosis before starting treatment was reasonable. To this end they attach a lab report and cite a FAQ from the World Health Organization, the latter of which is outside the court's scope of review on a 12(b)(6) motion. As for the former, the court may only consider it if it is central to plaintiff's claim and referenced in his complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

The attached report is dated August 8, 2023, from a specimen collected on August 3, 2023. It advises that plaintiff's screening shows "a POSSIBLE presence of HIV-1 antibodies or HIV-2 antibodies, and/or HIV-1 p24 antigen" and that "[a]dditional screening is required for diagnosis." Doc. 7, att. 1. In his complaint plaintiff alleged that the jail was informed of his HIV results and provided with paperwork upon his return on July 7, 2023. Doc. 1, ¶ 10. He further alleges that he "tested positive for the HIV virus again" on July 25, 2023, and that he was informed of this by Patterson who told him "that the bloodwork must be sent off again to confirm, which was finally returned on August 25, 2023." *Id.* at ¶¶ 13–14. Defendants maintain that the attached report is the first test administered by the jail, and that it shows their reasonableness in delaying treatment until plaintiff's HIV status could be confirmed. But they omit the paperwork they allegedly received when plaintiff returned to the jail. If such paperwork was received and confirmed plaintiff's diagnosis,

Page 6 of 9

and if the jail can provide no adequate explanation for performing additional testing rather than starting treatment, the plaintiff may be able to show deliberate indifference. Accordingly, without additional evidence and/or expert guidance, the court cannot determine whether the proper standard of care was met.

Plaintiff has also claimed deliberate indifference in the jail's delay in treating his pneumonia, waiting six days after he "became so ill that he could not stand up and [lay] on the ground struggling to breathe and vomiting" to send him to the hospital. Doc. 1, ¶¶ 23–25. This delay allegedly resulted in a long-term hospital stay and permanent brain damage from the lack of oxygen. *See id.* at ¶ 44. Defendants have provided no answer to these troubling charges. The allegations, if proven, represent a flagrant case of deliberate indifference to serious and apparent medical needs.

Defendants maintain, however, that Patterson is entitled to qualified immunity because of the lack of any directly analogous Fifth Circuit precedent on confirmation of an HIV diagnosis before beginning treatment. "Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). A court asks (1) whether the plaintiff has alleged a violation of a constitutional right and (2) whether the right was "clearly established" at the time of the alleged violation. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The court has already determined that plaintiff has alleged violations of constitutional rights through his treatment delays. The next question, then, is whether the rights were clearly established. A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ford*, 102 F.4th at 307 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The salient question is whether the state of the law gives the official 'fair warning' that his or her conduct is unconstitutional." *Id.*

Plaintiff alleged that Craft delayed approving his HIV treatment because he was waiting to see if the Red Cross would cover it, due to the cost. Doc. 1, ¶ 40. The Fifth Circuit has denied qualified immunity to prison officials who delayed treatment (in that case, a hip replacement) for financial reasons, joining several other circuits in the conclusion "that a non-medical reason for delay in treatment constitutes deliberate indifference." *Delaughter v. Woodall*, 909 F.3d 130, 137–39 & n. 7 (5th Cir. 2018). As the court recently noted, this holding "merely reiterated and solidified what has long been the law in this circuit" concerning non-medical justifications for treatment decisions. *Smith v. Linthicum*, 2022 WL 7284285, at *5 (5th Cir. Oct. 12, 2022) (unpublished). Accordingly, defendants fail both steps of the qualified immunity analysis.

Finally, defendants seek dismissal of the state law claims for failure to establish negligence. The court has already held that plaintiff has stated a claim under the considerably higher bar of deliberate indifference. Accordingly, the motion will likewise be denied as to the state law claims.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 7] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 14th day of November, 2024.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**